**Billy Glen ISLEY, Petitioner-Appellant,**

**v.**

**Louie L. WAINWRIGHT, Respondent-Appellee.**

**No. 85-3212.**

United States Court of Appeals, Eleventh Circuit.

July 7, 1986.

Suzanne Armstrong, St. Petersburg, Fla., for petitioner-appellant.

Michael J. Kotler, Asst. Atty. Gen., Tampa, Fla., for respondent-appellee.

Before TJOFLAT and KRAVITCH, Circuit Judges, and TUTTLE, Senior Circuit Judge.

CORRECTED OPINION

TUTTLE, Senior Circuit Judge:

Billy Glen Isley appeals from the district court's denial of his petition for habeas corpus challenging his state court conviction for first degree murder. Isley was sentenced to a life sentence with a mandatory 25 years incarceration.

## I. ISSUES

Isley raises only two issues on this appeal. The first is that his Fifth and Sixth Amendment rights were violated when, during the trial, two psychiatrists selected by the state testified in rebuttal against him and included in their testimony statements they said he made to them about his commission of the crime. He contends that such statements as he made to the psychiatrists were not necessary to an assessment of the defendant's sanity.

The second is Isley's claim that, although the public defenders office was appointed for him by the magistrate and counsel (not present counsel) purported to represent him up to and including the filing of a pretrial stipulation and a "proposed findings of fact and conclusions of law," the latter document conceded that Isley had no case, but failed to comply with the Supreme Court's requirement in such a situation as outlined in *Anders v. State of California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). The statement said:

> The undersigned counsel has thoroughly reviewed the state court record on appeal as it pertains to the issue raised in this petition. Based on this review, counsel is unable to argue that any constitutional error has occurred which would warrant the issuance of a writ of habeas corpus. In view of the arguments made in this memorandum and pursuant to *Anders v. State of California*, 386 U.S. [738] 747 [87 S.Ct. 1396, 1401, 18 L.Ed.2d 493] (1967), counsel requests that he be allowed to withdraw. Further, it is requested that petitioner be allowed to supplement this memorandum should he desire to do so.

Isley contends that it was counsel's duty to represent him to the best of his ability at least until the court entered an order allowing him to withdraw. No such order was ever entered by the court. Instead, the state, as might be expected, filed as its "proposed findings of fact and conclusions of law" the following document:

> PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW
>
> Counsel for Respondent has reviewed both the record and the proposed findings of fact and conclusions of law filed in this cause and must agree with counsel for Petitioner that no meritorious grounds exist in support of this appeal.
>
> Should this Court determine, however, that *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1976) requires consideration of issues not presently before this Court, counsel for Respondent would appreciate the opportunity to respond.

Isley contends, therefore, that in fact while representing him his counsel actually filed a brief in favor of the state's position which he denominated "Findings of Fact and Conclusions of Law."

## II. DISCUSSION

Because we consider the second issue dispositive of the case, we do not need to decide whether this Court will apply the law as contended for by the appellant to the effect that a court's permitting a psychiatrist who is a rebuttal witness, to testify as to statements made by the accused, amounting almost to a confession of the crime, when not relevant to the issue of sanity, deprives the accused of his right not

to testify against himself under the Fifth Amendment.

There can be no question about the fact that the assistant public defender, appointed by the court, actually owed to the defendant every obligation owed by a lawyer to advocate Isley's cause. Even though, under the principle announced by the Supreme Court in *Anders v. State of California, supra,* counsel on an appeal from a trial court may be permitted to withdraw if he files a statement and a brief as provided in that decision, no case has been called to our attention and we have found none, in which counsel duly appointed in a trial court, while still acting in that capacity, can file as representative of a defendant an admission that the defendant has no case, as a part of the proceedings pending before the trial court.

As a part of the so-called "findings of fact and conclusions of law," counsel made the following statement with respect to appellant's contention:

> Prior to the presentation of the state's rebuttal evidence, defense counsel moved unsuccessfully to limit the direct examination of the state's rebuttal witnesses to the question of sanity. Over objection, the state's two psychiatric experts, Dr. Ernest Bourkard and Dr. Arturo Gonzalez, were permitted to testify as to the facts of the crime as told to them by petitioner. In particular, petitioner admitted to Dr. Bourkard that he had suggested to his accomplices that the victim be given an overdose of medication; further, petitioner denied to Bourkard that he had been under the influence of drugs on the night of the murder, contrary to the defense's contention that petitioner had been under the influence of both alcohol and drugs. This last statement was particularly damaging in view of the defense counsel's attempts to establish a lack of premeditation due to excessive use of drugs and a mental disorder. Dr. Gonzalez testified that petitioner admitted putting his hand over the victim's mouth to stifle his screams. Accordingly, this admission was damaging in that it showed complicity in the crime with petitioner's accomplices and suggested some knowledge on the part of petitioner on the wrongfulness of his conduct.
>
> On direct appeal, petitioner argued that any inquiry directed to a court appointed psychiatrist by the state must be limited to sanity or insanity and that a psychiatrist is not permitted to testify directly as to the facts elicited from defendant during the course of a compulsory examination. In support, petitioner cited *Parkin v. State,* 238 So.2d 817 (Fla. 1970) in which the Florida Supreme Court held that a defendant's right to the freedom from self-incrimination was not invaded by the court's ordering of an accused to give testimonial responses to a court appointed psychiatrist. However, the testimonial responses must be limited to opinions as to sanity or insanity.

Counsel then, however, commenced his argument against petitioner's interest as follows:

> Although *Parkin* does seem to indicate that a psychiatrist may not proffer to a jury those statements made by a defendant as a result of a court ordered examination, that decision is certainly not binding on this Court and only acts as persuasive authority. In *Vardis v. Estelle,* 715 F.2d 206 (5th Cir.1983), the court held, when faced with this very same issue, that once an accused gives his notice of intention to rely on the insanity defense and has introduced psychiatric evidence on the guilt/innocence phase of his trial supporting this claim, the introduction by the defense constitutes a waiver of the defendant's Fifth Amendment privileges in the same manner as would the defendant's election to testify at trial.

Defense counsel's "back of the hand" treatment of the Florida case and its reading of *Vardis v. Estelle,* clearly shows a complete abandonment of his client's interest. *Parkin* does not only "seem to indicate a psychiatrist may not proffer to a jury those statements made by a defendant

as a result of a court ordered examination," it states positively:

> In other words, the court and the state should not in their inquiry go beyond eliciting the opinion of the expert as to sanity or insanity, and should not inquire as to information concerning the alleged offense provided by a defendant during his interview....

238 So.2d at 820. That is the law of Florida which, with respect to a Florida criminal case should certainly be persuasive authority for a federal court sitting in that state. As relates to *Vardis v. Estelle, supra,* defense counsel was wrong in saying that *Vardis* held:

> That once an accused gives his notice of intention to rely on the insanity defense and has introduced psychiatric evidence at the guilt/innocence phase of his trial supporting his claim, the introduction by the defense constitutes a waiver of the defendant's Fifth Amendment privileges in the same manner as would the defendant's election to testify at trial.

In fact, what *Vardis* held was where, as here, the testimony of the state psychiatrist is offered solely in rebuttal to a defense of insanity *"and is properly limited to that issue,"* the defendant's Fifth Amendment rights are not violated.

The principles involved in *Vardis v. Estelle, United States v. Cohen,* 530 F.2d 43 (5th Cir.1976) and *United States v. Leonard,* 609 F.2d 1163 (5th Cir.1980), as fully recognized by Isley in his pro se briefs filed in the district court and subsequently in this Court, clearly raised a legal issue that deserved presentation by Isley's counsel to the trial court.

*Anders* dealt with a situation in which counsel for an appellant sought to be excused from proceeding on behalf of his client because he saw no merit to the client's case. The Court there stated:

> The constitutional requirement of substantial quality and fair process can only be attained where counsel acts in the role of an active advocate in behalf of his client, as opposed to that of *amicus curiae.* The no-merit letter and the procedure it triggers do not reach that dignity. Counsel should, and can with honor and without conflict, be of more assistance to his client and to the court. His role as advocate requires that he support his client's appeal to the best of his ability. Of course, if counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court—not counsel—then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous. If it so finds it may grant counsel's request to withdraw and dismiss the appeal insofar as federal requirements are concerned, or proceed to a decision on the merits, if state law so requires. On the other hand, if it finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal.

*Anders v. California,* 386 U.S. at 744, 87 S.Ct. at 1400 (footnote omitted.)

The situation presented to the trial court here after the parties filed their proposed findings and counsel for the defendant requested to be relieved required no less than is demanded by *Anders* in an appellate court. For the proper treatment of such a matter on appeal *see United States v. Blackwell,* 767 F.2d 1486 (11th Cir.1985), we said:

> *Anders* thus accommodates the tensions imposed upon a lawyer, who is both an advocate for his client and an officer of his court, by setting in motion a procedure whereby the court can independently evaluate the merit of a pending appeal. "This procedure will assure penniless defendants the same rights and opportunities on appeal—as nearly as prac-

ticable—as are enjoyed by those persons who are in a similar situation but who are unable to afford the retention of private counsel." *Anders,* 386 U.S. at 745, 87 S.Ct. at 1400.

If the *Anders* procedure is to work, therefore, the lawyer filing the *Anders* brief must, to the extent possible, remain in his role as advocate; at this stage of proceeding *it is not for the lawyer to act as an unbiased judge of the merit of particular grounds for appeal.* He or she is required to set out *any* irregularities in the trial process or other potential error which, although in his judgment not a basis for appellate relief, might, *in the judgment of his client* or another counselor or the court, be arguably meritorious. This is done in order that these potential claims not be overlooked. The objective of these potential claims is for the court's determination, not the advocate's.

*Id.* at 1487–88. (Emphasis added.)

Even if the magistrate was correct in his determination as to the law, which, as we have said above, is questionable, some fact finding tribunal should have determined which of the statements made by Isley to the psychiatrists were necessary or usable by them in their determination of his sanity or insanity. In the pretrial stipulation, counsel stated that he was unable to state whether a hearing was necessary before the magistrate. Absent such a hearing, the magistrate determined that: "Petitioner's statements relating to the offense and the circumstances involved were important factors on which the experts based their opinions that petitioner could distinguish between right and wrong." (Footnote omitted.)

Although the holding of a hearing in a habeas corpus case is largely discretionary with the trial court, it seems clear that in order to assist the court in the development of this important question of law, a hearing might well have been held by the magistrate to assist him to determine to what extent the statements of the accused to the psychiatric experts were useful to them in arriving at their expert opinions of Isley's sanity.

It should also be noted that defense counsel did not attempt in the pretrial stipulation to give any indication as to which of the statements made by Isley to his psychiatrists were, under his theory of the case, not useful or relevant to the issue of sanity.

The judgment is REVERSED and the case is REMANDED for further proceedings not inconsistent with this opinion.